UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT MICHAEL,

    Plaintiff,

                                                Civil Case No. 13-10760
v.                                               Honorable Patrick J. Duggan

ALLEGHENY DESIGN MANAGEMENT, INC.,

    Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is a negligence action removed from Michigan state court based on diversity jurisdiction on February 22, 2013.  Plaintiff Robert Michael ("Plaintiff") alleges in his First Amended Complaint that Defendant Allegheny Design Management, Inc. ("Allegheny") is liable for the injuries Plaintiff suffered on September 17, 2011, when he fell from a scissor lift from which a safety bar had been removed.  In his First Amended Complaint, Plaintiff alleges two counts against Allegheny: (I) "active negligence" and (2) "common work area."  (ECF No. 1-2.)  Presently before the Court is Allegheny's motion for summary judgment, filed pursuant to Federal Rule of Civil Procedure 56 on October 14, 2013.  (ECF No. 16.)  The motion has been fully briefed and this Court held a motion hearing on January 30, 2014.  For the reasons that follow, the Court grants

Allegheny's motion.

## Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).  After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact."  *Id.* at 323, 106 S. Ct. at 2553.  Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must

present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255, 106 S. Ct. at 2513.

## Factual Background

When Plaintiff fell from the scissor lift on September 17, 2011, he was employed as a finish-carpenter for DH Construction Company. Allegheny had contracted with DH Construction to perform work on a project at a Finish Line store in the Fairlane Mall in Dearborn, Michigan. Allegheny was the general contractor on the project. The scope of Allegheny's subcontract with DH Construction included the latter's framing and installing metal studs and drywall in the retail space.

Larry Walko was Allegheny's superintendent at the project site. In that

capacity, Walko was responsible for hiring subcontractors based on a list provided by Allegheny, preparing Allegheny's contracts with the subcontractors and overseeing their execution, scheduling the contractors, and being present at the job site. (ECF No. 16 Ex. C at 7-8.) On Allegheny's behalf, Walko had hired several subcontractors in addition to DH Construction to perform work at the site, including an electrical company and a sprinkler-fitter company. Walko testified that there were no more than five to seven people working on the site on the busiest of days. (*Id*. at 48.)

The subcontractors working on the Finish Line store used three scissor lifts at the site: two which had been rented by DH Construction and one which was owned or rented by the sprinkler-fitter company. (ECF No. 18 Ex. A at 53-54.) The design of the scissor lift provided by the sprinkler-fitter company prevented the safety bars in the "bucket" (i.e. where the worker stands) from being removed. (*Id*. at 65.) The other two scissor lifts were identical and the design enabled the removal of at least one safety bar. (*Id*. at 67-68.) In fact Plaintiff saw a safety bar from one of the scissor lifts laying around the job site on two of his first three days working there. (*Id*. at 66-68.)

Plaintiff, however, had not worked on a scissor lift missing a safety bar during those first three days. (*Id*.) It was the common practice at the job site for

the employees of the various subcontractors to use the scissor lift at the location where the employees were working; rather than moving the scissor lifts around the site. (*Id*. at 53-55.) In other words, a worker would use the scissor lift located in one the section of the retail space while doing his construction job at that location, and then move to the scissor lift located closest to the next area where his work was to be done. (*See id*. at 53-55.)

On his fourth day working at the job site, September 17, 2011, Plaintiff began doing drywall finishing work while using the sprinkler-fitter company's scissor lift. Another drywall finisher, Anthony Poma, worked on a section of drywall adjacent to Plaintiff, using one of the scissor lifts provided by DH Construction. Poma was sick that day, and left the job site soon after arriving. Shortly thereafter, Plaintiff stepped onto the scissor lift that Poma had been using in order to complete the work on the drywall that Poma had started. This was the scissor lift missing a safety bar. Nevertheless, Plaintiff did not realize the bar was missing when he began using the lift. (*Id*. at 67, 83-84.) After entering the scissor lift, Plaintiff elevated the bucket to about twelve feet off the ground and subsequently fell. As a result of the fall, Plaintiff broke his arm in three areas. Plaintiff was the only person using the scissor lift when he fell. (*Id*. at 70.)

**Allegheny's Arguments and Analysis**

Allegheny premises its motion on the common law principle that property owners and general contractors generally are not liable for the negligence of independent subcontractors and their employees. *See, e.g., Ghaffari v. Turner Constr. Co.*, 473 Mich. 16, 20, 699 N.W.2d 687, 689-90 (2005). In *Funk v. General Motors Corp.*, 392 Mich. 91, 104, 220 N.W.2d 641, 646 (1974), the Michigan Supreme Court established one exception to this rule: the "common work area doctrine." This doctrine allows for recovery against a general contractor if the plaintiff shows the following:

> (1) the defendant, either the property owner or general contractor, failed to take reasonable steps within its supervisory and coordinating authority (2) to guard against readily observable and avoidable dangers (3) that created a high degree of risk to a significant number of workmen (4) in a common work area.

*Ormsby v. Capital Welding, Inc.*, 471 Mich. 45, 54, 684 N.W.2d 320, 326-26 (2004). The plaintiff must demonstrate all four elements for the doctrine to apply. *Id.* at 59, 684 N.W.2d at 328. Here, Allegheny argues that all of the elements cannot be established and that summary judgment therefore is warranted.[1]

---

[1]As stated, the common work area doctrine is an exception to the general rule that precludes liability of a general contractor for the negligence of *independent contractors and their employees*. In his First Amended Complaint, however, Plaintiff asserts an "active negligence" claim in addition to his "common
(continued...)

Specifically, Allegheny contends that it was not exercising supervisory authority or control over the drywall work completed by Plaintiff. Allegheny further argues that the absence of the safety rail from the scissor lift was not readily observable to those not using the lift; and that the one other worker who used the lift that day, although noticing that the bar was missing, did not view it as a safety risk. Moreover, Allegheny contends that a significant number of workmen were not exposed to the danger of falling from the scissor lift missing a safety rail. Lastly, Allegheny maintains that the incident did not occur in a "common work area" because Plaintiff was the only worker using the lift at the time of the accident.

Allegheny argues that the first element necessary to invoke the common work area exception is not satisfied because the undisputed facts establish that "DH

---

[1](...continued)
work area" claim. (*See* First Am. Compl. ¶ 13.) Yet Plaintiff's claim of "direct negligence" by Allegheny relates only to its superintendent's alleged failure to keep the job site safe. There is no evidence that Walko removed the safety bar from the scissor lift and the evidence is that he was unaware that the safety bar was missing prior to Plaintiff's fall. The Court is aware of Walko's testimony concerning picking up debris from the site and what he would do if he saw a worker working in an unsafe manner or under unsafe conditions. Nevertheless, the Court finds that Plaintiff fails to establish that Allegheny was contractually obligated or assumed the duty to keep the job site safe. Under Michigan law, that duty otherwise would only arise where the four elements of the common work area doctrine are satisfied.

Construction employees . . . were not receiving supervision or direction from Allegheny Design Management with respect to performing the drywall work being completed at the site at issue." (ECF No. 15 at Pg ID 90.) The evidence instead shows that Dan Ezzo, a DH Construction employee, supervised DH Construction employees, such as Plaintiff, at the job site. (*Id*. Ex. A at 36-38 (describing Ezzo as the "carpenter foreman").) Allegheny contends that there is no evidence establishing that its personnel knew or reasonably should have known that Plaintiff or any other worker was improperly operating a scissor lift without the safety guard rail before the accident at issue.

None of the cases cited by the parties focus on this first element of the common work area doctrine. The Court is not convinced, however, that it necessarily requires the kind of supervision that Allegheny argues it was not performing at the job site. As the Supreme Court of Michigan has advised, the fundamental question is "[w]hat was the danger creating a high degree of risk that is the focus of the general contractor's responsibility?" *Latham v. Barton Marlow Co.*, 480 Mich. 105, 113, 746 N.W.2d 868, 873 (2008). In the present case, it was the risk of a fall at elevated heights from a scissor lift missing a safety bar.

Nevertheless, Allegheny did not supply the lift in question for its subcontractors to use at the job site. Further, there is no evidence that Walko

supervised or controlled the use of the scissor lifts by the subcontractors' employees. The Court therefore concludes that Plaintiff has not proven this first element of the common work area doctrine. All four elements are required to render the doctrine applicable.

Accordingly,

**IT IS ORDERED**, that Defendant's motion for summary judgment is **GRANTED**.

Dated: February 7, 2014                    s/PATRICK J. DUGGAN
                                           UNITED STATES DISTRICT JUDGE

Copies to:
Edward M. Turfe, Esq.
Kassem M. Dakhlallah, Esq.
John Mitchell, Esq.